Good morning, Your Honors. May it please the Court, I'd like to reserve five minutes for rebuttal. Keep your eye on the clock, okay? Will do, Your Honor. This case arises from ICANN's intentional decision to disregard the application and auction processes set out in the Applicant Guidebook, which it admits are in place to protect the public interest in allocating critical Internet resources. The issues I'd like to address today, subject of course to the Court's questions, are one, the fact that the contracted issue implicates the public interest, and as such, any exculpatory clauses contained therein are void. Second, the fact that Section 1668 of the California Civil Code bars exculpatory clauses which seek to prospectively exculpate ICANN from fraud, wrongful conduct, and intentional or negligent violations of the law, which my client submits were alleged in the operative complaint, and that to the extent the Court determines they were not sufficiently alleged, certainly leave to amend would have been appropriate. And ultimately, that regardless of the Court's determination on Section 1668 applicability and the public interest nature of the contracted issue, that the clauses are unconscionable, meet both the procedural and substantive unconscionability issues, and as such, that provides another basis for  Justice Sotomayor, I would just want to clarify one thing. Are the issues in this case all They are, Your Honor. Yes. And so to begin. One more question before you begin. As I understand it, you didn't argue below that the covenant not to sue doesn't apply to claims against ICANN. Are we to treat this on appeal for the first time? Yes, Your Honor. This Court is allowed to reach that issue to know that. Or we can treat it as having been waived, right? Your Honor, I would submit that the first. I know you don't want that, but I'm just saying that's where we are, right? Yes, but I would submit that the facts at issue would allow this Court to, in fact, reach the issue today, and that that would be the proper outcome. Beginning with. So getting back to your statement that this is really an exculpatory clause, why isn't it a valid covenant not to sue in that there's an option to go to arbitration? As I understand it, originally your client opted to have that option, but then withdrew that in favor of litigation. So the fact that there was essentially a mechanism under the release to challenge ICANN's decision-making process, doesn't that make this then a valid covenant not to sue? Your Honor, no. And the main reason is that although the provision includes these accountability mechanisms, one of which is independent review process, which has been described as an arbitration, it's not actually a binding arbitration. Despite indications in ICANN's bylaws and certainly what applicants for the new GTLD program were led to believe in that the arbitration provisions were meant to be final and precedential, ICANN has repeatedly taken the position since the applicant guidebook and since applicants paid to participate in this process that, in fact, the decisions that are issued by the independent review process, the IRP, are simply advisory and they're non-binding. And in fact, at least one IRP panel has taken issue with that, and that is the IRP panel in the DotConnect-AFCA case that's cited in the briefing. Is there anything in the record that shows that IRP decisions are advisory only? Yes, Your Honor. I would direct you to the excerpt of record. Bear with me for one moment. There is a decision in the record from the independent, from the IRP and the panel that issued a decision in that regard that specifically notes and quotes from ICANN's position that these decisions are non-binding. And where is that in the record? That would be ER-109. And in fact, the ICDR ruling stated, explained why it believed that actually these processes should be binding and noted the fact that ICANN owed a duty to the applicants to the extent they were going to take the arbitrations were, in fact, non-binding and advisory opinions only, that they had the obligation to not only advise the applicants of this fact prior to the submission of these applications in the exchange of a $185,000 fee, but also that this was something the Senate may have wanted to have known during the time when ICANN was seeking to be privatized. And it was noted that the IRP process touted by ICANN as the ultimate guarantor of accountability is now nothing more than an advisory process. I'm troubled by what you're saying here because as I read the document, I see nothing in there about it being advisory. Apparently this panel was a one-off kind of a thing. Are there more cases where the IRP panel says that this is only advisory? And, Your Honor, my understanding is that ICANN has taken the position... No, I don't care about that. I'm asking you, where in the document, because we're bound by the documents here, where in the document does it say that the IRP decisions, which are effectively an arbitration, and they're composed of an independent panel of arbitrators, that those are advisory only? The documents, in fact, say that these would have final and precedential value. Unfortunately, that's not the case in practice. So is the remedy then to basically treat this as an exculpatory clause because ICANN has taken a position that's contrary to its bylaws? Or is the remedy in some other forum to say, look, comply with your bylaws and treat these arbitration decisions as binding? Well... It seems to me to be the latter, right? In interpreting whether there's an alternative mechanism here, what's going with the bylaws? Certainly, it would seem to me that the path of least resistance for ICANN would be to simply comply with what it said from the get-go, which is these IRPs are going to be final and precedential value. To the extent the Court wants to take this opportunity to provide guidance to ICANN in that regard, it would seem like a good thing. That said, we do have now at least one California State Court decision, which has determined that as stated, these clauses do not cover claims for fraud, wrongful conduct, and in that to the extent the plaintiff in that case had presented facts that suggested ICANN had in fact violated in a fraudulent, intentional, and wrongful manner certain of the bylaws and sections of the African Guidebook, that there was a tribal issue of fact and the case would need to proceed beyond semi-judgment. Wait a minute. Isn't this the case that you've presided to the Court? This is the .Connect Africa case, and it is cited in the reply brief of the most recent decision. So your perspective is that this is just a big fraud? By this, Your Honor, I ask... You mean the claims you make, that ICANN has treated your client in a fraudulent manner, that the written documents really don't mean anything, they're just joking? Unfortunately, that's how the situation has played out. Are you claiming what happened here was intentional misconduct? Yes, Your Honor. In terms of your client not getting his... Your Honor, the intentional misconduct is not that my client did not secure what it wanted out of the auction. The intentional misconduct is that ICANN threw away the applicant guidebook in determining that it would push forward with attempting to delegate a GTLD to an entity who has been demonstrated to have violated the terms of the guidebook. And who is that, the IRP? No, that is one of the other applicants, NDC, who has admittedly assigned the rights of its application, which is a potentially disqualifying act under the applicant guidebooks, to a third-party verisign, who did not participate... I'm sorry, I'm a little confused. So what is the intentional misconduct of ICANN? The intentional misconduct of ICANN is that when the potentially disqualifying conduct was brought to their attention, that they either intentionally refused to investigate in order to benefit themselves and the third party, ICANN, but they were aware of this agreement behind the scenes and decided not to act. Did this have anything to do with your client? It impacted... Well, I understand it, but you're saying that ICANN dealt with another party, a third party, and that they dealt with them in an improper manner. Indeed, you're alleging intentional misconduct. What does that have to do with this case? The intentional misconduct is actually with regard to the conduct of the auction process to delegate the GTLD. Did that happen in this case? Correct, yes. They delegated the auction in this case? The auction took place. The winning applicant has come to pass, did in fact have an agreement to assign their rights in the application to a third party. That's illegal from your perspective. Correct. It violates the guidebook. It violates ICANN's obligations of open transparency. It violates their obligation to ensure that all of the parties... Why isn't it appropriate to then take up all of these issues, the various ways in which they violate their own bylaws or guidebooks in the arbitration forum that's been provided in the bylaws? Our argument would be, one, that the claims that issue do not fall within the clauses that are set forth within the applicant guidebook. And in fact, I believe the district court determined that it's not fair to the district court that these allegations and these claims would fall within those clauses. But also because to the extent that ICANN has taken the position that these arbitration processes are non-binding, the parties will just end up potentially right back in the same spot, potentially having blown statute of limitations. Are those allegations of complaint that ICANN basically is now acting contrary to the mandatory nature of these arbitration proceedings? That allegation is not in the complaint. Right, right. So I think that that's the point, right? You're invoking California Civil Code Section 1668 in order to invalidate what appears to be a covenant not to sue on some fraudulent theory. But that theory, as the district court pointed out, isn't really based on fraud. So when you look at the allegations, the complaint, they all relate to ICANN's handling of the application and running the auction and how they respond in terms of the investigation to the irregularity and all that. All of those claims alleged in the complaint seem to me to be covered under the umbrella of the covenant not to sue. So how do we deal with the fact that now some of the arguments concerning fraud appear outside of the face of the pleading? And I would ask the court to consider, one, that this is not a situation where the complaint was filed two years after the conduct at issue. The complaint and the amended complaint were filed during a fluid situation where facts were coming out at a quick pace. This is also not a case where my client was provided with multiple opportunities to amend or the early third-party discovery that it sought. So certainly, at the very least, I would request and believe that my client can plead claims that would fall outside the scope of Section 1668 to the extent the case is remanded with leave to amend. Okay, counsel. You've gone over your three minutes. We'll give you a little bit of extra time, but let's hear from the opposing counsel, okay? Thank you, Your Honor. I take it you disagree. Your Honor, we only disagree with respect to the 1668 issue on conscionability and leave to amend. But other than that, we agree on everything. Good morning, and may it please the Court. Eric Ensign with Jones Day on behalf of ICANN. And perhaps I can be most helpful this morning if I first address the argument that Ruby Glenn is now raising, that the independent review process is illusory or advisory. Right. That claim is unsupported by the record and is not dispositive as to whether or not Section 1668 applies. As to the first point, the First Amendment complaint makes no allegations that the independent review process is advisory or illusory or nonbinding. And Ruby Glenn did not raise that issue in the district court level. She was raising it for the first time here on appeal. Instead, the First Amendment complaint alleges that the independent review process is effectively an arbitration operated by the International Center for Dispute Resolution of the American Arbitration Association, comprised of an independent panel of arbitrators. The bylaws incorporated in the First Amendment complaint state that IRP declarations are final and precedential. And to be clear, the board has treated each IRP declaration regarding the new GTLD program as if it were binding on the board and then has taken steps to address those findings. I think it's also important to note that the independent review process provides real legal process. It's overseen by the ICDR. It is mandatory, meaning ICANN must participate. It's they are heard by three member panels made up of Federal former judges, excuse me, former Federal judges such as Judge Matz, Judge Taborisian, Judge Bonner, as well as other world-renowned arbitrators. They involve discovery. This new argument that ICANN is now taking the position or treating these arbitration decisions as nonbinding, that suggests maybe leave to amend. But was that argument raised below? Your Honor, that argument was not raised below. And I don't think that that suggests that leave to amend should be provided. Because whether the independent review process is binding or nonbinding really is not dispositive as to whether or not 1668 applies, and that's true for two reasons. Even if this Court or really any court were to find that the independent review process was nonbinding, this Court's ruling in Woolsey would dictate that the covenant not to sue is still not an exculpatory provision. Because in Woolsey, this Court held that nonbinding arbitration is an enforcement alternative dispute resolution mechanism. But it may not go to 1668, but does it go to the unconscionability argument? Because then the statute, by the time you go through this whole arbitration procedure, maybe you've given up the statute of limitations with regard to litigation? I don't believe so, Your Honor, because the fact of the matter is that there is no factual dispute about this issue. There's no factual dispute about whether the IRP is binding or nonbinding on the board. It was never raised below, and it's a factual dispute that is now being created on appeal, and there's no support for it. The only thing that Ruby Glen cites to in its papers as to support its claim that the process is illusory is an IRP declaration. In that declaration, the panel found that its declaration was binding on ICANN. ICANN has accepted that declaration and treated that declaration and every other declaration regarding the new GTLD program as if it were binding. So you're saying that the IRP decision decided by opposing counsel itself said it was final and binding on ICANN, and ICANN has accepted that? That is correct, Your Honor. And you represent ICANN? Yes, ma'am. And you are representing to this Court that if this goes to arbitration before that panel, that you will agree that it is binding? Your Honor, what I am guaranteeing to this Court is that we will follow the bylaws at issue. The bylaws at issue in this case state that IRP declarations are final and precedential. There have been a number of IRP panels who have interpreted that to say that it's ruling on the merits. It's finding as to whether or not ICANN violated the bylaws or violated the articles of incorporation. That is final and precedential, meaning ICANN cannot re-litigate that issue, cannot appeal that issue. And that, I am telling you, Your Honor, is ICANN's view of these matters, is that they are final and precedential, and if an IRP panel makes a declaration like that, the Board treats it as if it was binding, or at least has done so to date in all matters relating to the new program. You say as if it was. So you're saying there's a chance that it might not be final and binding? Final and precedential, definitely, Your Honor. That's in the bylaws. Right. The bylaws don't use the words binding or nonbinding. Right. Okay. And I can't tell this Court that there will never be a situation where the ICANN Board were to say that in some extreme situation a panel got it wrong. No, but you're representing that in this case, if you wind up before that body, that you will, in accordance with the bylaws, not dispute the finality of that decision. I am saying, Your Honor. It's subject to, you know, possible court review of the arbitration decision. ICANN is reserving the rights that anyone does with respect to an arbitration award as provided by statute. Is that what you're saying? I think that's right. What I'm saying is that all I can offer to this Court is what's in the bylaws and what ICANN has done to date. It's impossible for me to predict what may happen in the future or what's possible. But I think what Your Honor says is, yes, reserving all rights that one has when it enters into a process like that. I fully expect that the Board would treat an IRP declaration regarding Ruby Glenn's claims the same way the Board has treated declarations relating to other new GTE applications. But is the whole issue moot now with regard to arbitration? Or this may be outside the record, but is it on hold to be revived depending on what happens in litigation, or they've just completely given up that option in favor of litigation in this case? Your Honor, the .web contention set, so the seven or eight applications for .web, it is currently on hold. It's on hold because another .web applicant has filed accountability mechanisms or begun accountability mechanisms with regard to the very same issues that Ruby Glenn raises in this case. Because of the triggering of those mechanisms, ICANN has placed the contention set on hold. If ICANN were to take it off hold, for example, or were to award the TLD to New.co or someone else, for that matter, that would be a new action that I think Ruby Glenn could then file an IRP regarding that action and presumably make the same arguments it's making in this case. Let me quickly move on. It's not moot. I'm sorry? So it's not moot. No, I don't believe it is moot. And as I said, there is another applicant who has entered into what we call the filing of an IRP. Let me be more precise. So the issue of the possibility of arbitration is not moot. That is correct. Possibility of arbitration. Okay. Yes. I believe that's correct, Your Honor. Okay. Finally, just to reiterate what this Court ruled in Woolsey, that is, nonbinding arbitration is an enforceable alternative dispute resolution mechanism because there's an agreement to resolve disputes through a neutral third party. And that's certainly what the independent review process is. If I can move on to leave to amend because I think it's clear from the First Amendment complaint as well as clear from Judge Anderson's order that I can't – I'm sorry, Ruby Glenn has not alleged fraud or intentional misconduct claims that would be prescribed by Section 16.8. I understand now that Ruby Glenn is saying they could do that. They haven't done it to date. And I have a few reactions to the notion that Ruby Glenn can do that now if granted leave to amend because I think at the end of the day, whether they can state claims under 16.68 is an important issue that this Court will have to resolve. Ruby Glenn never indicated to the district court that it could allege fraud or intentional misconduct claims. Ruby Glenn had an opportunity to amend its original complaint and that was after ICANN raised the argument in the TRO proceedings that 16.68 did not apply because Ruby Glenn had not alleged fraud claims. So Ruby Glenn did get an opportunity to amend its complaint to add the type of claims that are prescribed by 16.68 but didn't do it. Third, the – and this is hard for me to succinctly state, but I'll put it this way. The factual setting of this case just does not lend itself to claims of fraud, meaning the covenant not to sue is limited to ICANN's review of applications. And I find it difficult to see how ICANN could intentionally defraud an applicant while it's reviewing applications. And that's inherent in Judge Anderson's order as well when he stated he couldn't imagine how these types of claims could be alleged against ICANN and was certainly part of his decision making when he granted the motion to dismiss with prejudice. Finally, there's been no proffer of facts to this Court or the district court of what these fraud claims would look like. Ruby Glenn has had plenty of opportunities to demonstrate to this Court the type of facts it believes it has, and it hasn't done it yet. The notion that the entire guidebook is a sham and that ICANN, through a community-driven process, made intentional misrepresentations in the guidebook in order to induce Ruby Glenn to submit its application is really incredible. And there's just no support for it. And frankly, it's completely at odds with the factual setting, which is the number of people involved in the drafting of the guidebook, the number of people who submitted applications, and frankly, the amount of success that Ruby Glenn's parent organization has had in the program. They've had, I believe it's 200 TLDs have been delegated to that organization through the very same program that Ruby Glenn is complaining about here. How old is the guidebook? The guidebook was published in 2012. The policy development work that went into the guidebook began in 2007. And so there was much policy development about what the system or what the application process would look like. That began in 2007. In, I believe, 2010, 2011, ICANN began publishing versions of the guidebook. They would get public comment and comment from would-be applicants and other organizations and would then edit the guidebook, publish another draft, and it went through 10 drafts over two years. It involved potential applicants, including Ruby Glenn's parent organization, Donuts. Is that all on the record? It is, Your Honor. It is in the preamble of the guidebook, which is ER-719. It is also in the congressional testimony of Paul Stahura that we refer the court to in our brief, where he describes the process that ICANN went through and his involvement in it. So I do believe it is in the record, Your Honor. It also was noted by Judge Anderson in his order dismissing the action. Finally, if I can just address unconscionability, the guidebook is not unconscionable procedurally or substantively. And I believe the way that Judge Anderson looked at it was the correct way, which was through the totality of the circumstances. And what was critical to him was that the guidebook was not an adhesion contract because it did go through this community drafting process and that Ruby Glenn was a sophisticated partner. And I think those two factors are critical in evaluating whether or not the guidebook is itself procedurally unconscionable. And then finally, I do want to address the Tunkel argument very, very quickly. This is an argument like some of the others that have been raised for the first time here on appeal. Tunkel does not apply. This court has ruled twice in Arquell as well as Continental Airlines that the Tunkel doctrine simply does not apply in a commercial setting such as this. Unless there are any additional questions, I thank the court for its time and consideration. Thank you. Thank you. All right, counsel. We'll give you a little bit of extra time since we asked you some additional questions. We'll give you an extra two minutes. We'll give her three minutes. What the heck. Thank you. I would like to note a few things. First, it's notable that when pressed, counsel for ICAM would not commit to the fact that the outcome of the IRP is binding. Final and precedential? Certainly. The decision itself is final. That's what the decision is called. He would not commit to binding. And let's assume you're correct. What role, what impact does that have on this case? The impact it would have on this case is that to the extent the parties ended up in the IRP, went through this entire process, these processes take a significant amount of time, it is possible that certain statute of limitations may have run. It's possible the party's going to waste a significant amount of time only to be put in the same spot that they're already in now. But isn't the real point, though, of the IRP that unlike some other cases where you go to arbitration, that's it, all done, you have no other rights, this procedure, which apparently the parent corporation of your client was involved in drafting, they provide a mechanism for relief, if you will, another forum to go to. There is an ability to challenge that under the normal laws about arbitration, but you've got distinguished panelists and so on that are set up in that. Doesn't that fully satisfy the substantive rights issue, the whole concept that this is just an unconscionable box that you're put into? My understanding is that the exculpatory clause, if it's enforced as I can, would like to be read, that the end result of an IRP would not, in fact, allow for a challenge to that decision in a judicial fora. But isn't that just like our court? I mean, you know, you go to the district court, you come to us, you can maybe get to the Supreme Court, but that's it. It sounds like you're saying, you know, if you go to the Supreme Court, you don't like that, you can't go anywhere else, and the whole process is a fraud. That can't be right. There's got to be some end somewhere. It's a process you get. Here you get two bites at the apple, and maybe if you can find some basis for challenging the arbitration under the statute, you get more. Is any more required by the law? Your Honor, I would actually then point this court back to the California state court that interpreted this clause and found that it did not, in fact, apply to very similar claims that were asserted. And if the California court, interpreting its own law, determined that regardless of the accountability mechanisms, regardless of the IRP, regardless of the nature of the IRP, these similar claims fall outside of the scope of these clauses, they should be allowed to proceed. To the extent, and I'll leave you with this because I understand that the court has been generous in its time, to the extent ICANN and the court below indicated that they just couldn't understand how this process could lend itself to fraud claims, and yet there is a case currently proceeding to trial in the California court where a California court has disagreed. Okay. Thank you. Thank you both, counsel, for the argument. The case disargued is submitted, and the court stands adjourned for the day. All rise.
judges: Schroeder, M. Smith, Nguyen